RITTER (UNITED STATES v.). See Case No. 16,169.

## Case No. 11,867.

## The RIVAL.

[1 Spr. 128; [1] 9 Law Rep. 28; 4 West. Law J. 89.]

District Court. D. Massachusetts. March, 1846.

COLLISION — DIVIDED DAMAGES—COSTS—EXPERTS.

1. In cases of collision, where both vessels are to blame, the whole damages are to be equally divided between them; but the court may order the vessel most to blame to pay all the costs.

[Cited in Lenox v. Winisimmet Co., Case No. 8,248: The Bay State. Id. 1,148; Foster v. The Miranda, Id. 4,977; The Mary Patten, Id. 9,223; The City of Hartford. Id. 2,750; Vanderbilt v. Reynolds. Id. 16,839: Reynolds v. Vanderbilt. 106 U. S. 22, 1 Sup. Ct. 41; The Pennsylvania, 15 Fed. 817.]

2. Several nautical questions answered by experts.

[Cited in The Lady Franklin, Case No. 7,984; The Empire, 19 Fed. 559.]

This was a libel for collision. By consent, Captains Caleb Curtis and Samuel Quincy, were called as experts, somewhat analogous to the trinity masters in the admiralty in England, to whom questions were put, and answers were returned, as follows: On the 27th of November. 1845, the brig Rival, of 214 tons, with a cargo of molasses, arrived in the port of Boston, and was anchored by the pilot nearly off the end of Long wharf, about one hundred and twenty-five fathoms therefrom, and about one hundred and fifty fathoms from a schooner called the Ann, which was lying at anchor nearly off the end of Commercial wharf, there being from thirty to forty vessels at anchor in the harbor. The Rival let go her smaller anchor, weighing 1100 lbs., having an inch chain, and paid out twenty fathoms. The weather was rainy, and the wind was blowing quite moderately from the east. The rain continued violent till after one o'clock. The wind increased, sometimes varying the direction towards the south, until, at about twelve o'clock, it was a whole sail breeze, or somewhat stronger. At about half-past twelve, the wind changed suddenly to the S. S. W., coming in a squall, with considerable violence, causing the Rival to drag her anchor, and to come in collision with the Ann; the starboard quarter of the brig striking the bows of the schooner. The captain of the Rival went ashore about eight, and the first mate about eleven o'clock, leaving the vessel in charge of the second mate, and did not return till after the collision. The second mate was as competent as such officers usually are.

1st Interrogatory. Was it proper, or otherwise, to leave the brig in charge of the second mate? Answer. It was not improper or

[1] [Reported by F. E. Parker. Esq.. assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

unusual. 2d. Ought the brig to have let go her second anchor before the squall, and was she, or not, guilty of negligence in not doing so? Answer. It was not necessary, under the circumstances, to have the second anchor down. 3d. Ought she to have kept watch and watch? Answer. Not usual. 4th. Ought she to have had an anchor watch? Answer. Yes. 5th. And if so, would the mere fact of there being some one of the crew always on deck, without any specific duty assigned him, answer the requisition of an anchor watch? Answer. Yes. 6th. Ought the yards to have been braced to the wind, and would the omission constitute a neglect of duty? Answer. Not necessary from the strength of wind previous to the squall; after which there was not time. 7th. If only fifteen fathoms of the cable to the second anchor were paid out, before she was too near the Ann to admit of giving more chain, did she let go her second anchor as early as she ought? Answer. It does appear that, if the anchor was let go as soon as the brig struck adrift, there should have been more than fifteen fathoms of chain out; but a short time should be allowed after the discovery of her being adrift, to call the hands and let the anchor go. If the anchor was ready, one man or two men could let it go; then both chains should have been paid out. 8th. If the Rival was fifteen minutes in dragging her anchor, before she struck the Ann, does the fact, that during that time, the Ann did not pay out chain, of itself constitute or clearly prove negligence, or want of ordinary skill, on her part? Answer. We think it was a want of skill, or it was negligence on board the Ann, if she did not pay out chain, when she saw the Rival drifting down upon her.

G. T. Bigelow and M. S. Clarke, for libellant.

A. H. Fiske, for respondents.

SPRAGUE, District Judge. Upon the facts of this case, and the answers of the experts, it appears that both vessels were to blame. In such case, it is the settled doctrine of the admiralty, that the whole damage should be equally divided between the two vessels. I think that the Rival was most in fault, and that she ought therefore to bear all the costs. The Woodrop-Sims. 2 Dod. 83; De Vaux v. Salvador, 4 Adol. & E. 420; Shee, Abb. Shipp. tit. "Collision"; 17 Law Mag. 327; The Monarch, 2 Month. Law Mag. 607; The De Cock, 5 Month. Law. Mag. 303; Reeves v. The Constitution [Case No. 11,659]; Story, Bailm. § 608a; 3 Kent, Comm. 231.

Decree accordingly.